IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CRAIG EMMETT MENDENHALL, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:03-CV-0440 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
TO DENY PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is a Petition for a Writ of Habeas Corpus by a Person in State Custody filed by petitioner CRAIG EMMETT MENDENHALL challenging the results of a prison disciplinary proceeding. For the reasons hereinafter set forth, it is the opinion of the undersigned United States Magistrate Judge that the petition for a writ of habeas corpus should be DENIED.

I.
STATE COURT CONVICTION

Petitioner in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) as a result of judgments and sentences out of the 203rd Judicial District Court of Dallas County, Texas, the 278th Judicial District Court of Walker County, Texas, and the 87th Judicial District Court of Freestone County, Texas. On June 16, 1983, in Dallas County, petitioner pleaded guilty to six (6) counts of aggravated robbery with a deadly weapon, and

was sentenced to a term of imprisonment of thirty (30) years for each count, such terms to run concurrently. *See State v. Mendenhall*, Nos. F83-34776-UP, F83-83688-IP, F83-84773-UP, F83-84775-UP, F83-88927-VP, and F83-89838-IP. On December 13, 1990, in Walker County, petitioner pleaded guilty to the offense of escape, and was sentenced to a term of imprisonment of five (5) years, said sentence to run consecutively to the 30-year sentences out of Dallas County. *See State v. Mendenhall*, No. 15,320-C. On April 22, 1998, in Freestone County, petitioner was found guilty of the offense of assault of a public servant, and was sentenced to a term of imprisonment of sixty-five (65) years, such sentence to run consecutively to the prior 30-year and 5-year sentences. Further elaboration of the specifics of petitioner's state court convictions and any post-conviction proceedings are unnecessary as petitioner challenges only the result of a prison disciplinary adjudication in this proceeding.

## II.
## DISCIPLINARY ADJUDICATION

On January 17, 2003, after a disciplinary hearing, petitioner was found guilty of the prison disciplinary offense of extortion of money, a Level 1, Code 5.1 violation of the TDCJ-CID disciplinary rules. *See* Case No. 20030129461. Said finding of guilt was based on the charging officer's report and testimony as well as the offender's handbook, which described the offense charged. As punishment, 365 days of petitioner's previously accrued good time credits was forfeited.[1]

Following the finding of guilt in the disciplinary proceeding, petitioner filed a Step 1

---

[1] Other punishment petitioner was assessed constituted changes in the conditions of petitioner's confinement and does not implicate the Due Process Clause of the United States Constitution. *See Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 2297 (1995); *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997).

grievance which was denied on February 24, 2003. Petitioner also filed a Step 2 grievance which was denied on March 13, 2003. Petitioner challenges this disciplinary adjudication by the instant federal habeas corpus application.

### III.
### PETITIONER'S ALLEGATIONS

Petitioner contends his federal constitutional rights were violated with regard to the January 17, 2003 disciplinary proceeding in Case No. 20030129461 in the following respects:

1. Petitioner was denied due process because the hearing officer seized from petitioner a written statement and written questions he intended to ask witnesses and, thus, he was denied the right to read the written statement or ask the written questions;

2. Petitioner was denied due process because he was denied the right to call and question certain witnesses during the hearing, and was denied the right to secure written statements from said witnesses to present at the hearing;

3. Petitioner was denied due process because he was denied the right to present documentary evidence, to wit: bank statements, written statements from petitioner's banker, and Inmate Trust Fund print outs, at the hearing; and

4. Petitioner was denied due process because he was denied the right to an impartial fact finder.

### IV.
### ELIGIBILITY FOR MANDATORY SUPERVISED RELEASE

In order to challenge a state prison disciplinary adjudication by way of a federal petition for a writ of habeas corpus, a petitioner must, at a minimum, be eligible for mandatory release and have received a punishment sanction which included the forfeiture of previously accrued good time credits. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000). In his initial answer, respondent indicated petitioner was not eligible for mandatory supervision at the time of his disciplinary

adjudication, but did not argue petitioner's habeas application should be denied on this basis.

In an amended answer filed June 23, 2005, respondent argues petitioner's federal writ should be dismissed with prejudice because he is not eligible for release to mandatory supervision and, therefore, his loss of good time credits does not invoke due process concerns. Respondent contends petitioner is not eligible for release to mandatory supervision because of his convictions for aggravated robbery with a deadly weapon. Respondent acknowledges petitioner committed the aggravated robbery offenses on January 10, 12, 17 and 21, 1983, and February 6 and 8, 1983, and that, at the time petitioner committed these offenses, commission of them did not preclude eligibility for mandatory supervision.[2] Respondent argues, however, that petitioner's conviction for the offense of assault on a public servant on March 6, 1997, resulted in the application of the current mandatory supervision statute which provided:

> A prisoner may not be released to mandatory supervision if the prisoner is *serving or has previously been* convicted for an offense and the judgment for the offense contains an affirmative finding under Subdivision (2), Subsection (a), Section 3g, Article 42.12, of this code or if the prisoner is *serving a sentence for or has previously been convicted* of:
> . . .
>
> (10) a first degree felony under Section 29.03, Penal Code (Aggravated Robbery).

Tex. Code Crim. Proc. Art. 42.18 §§ 8(c) and 8(c)(10) (Vernon Ann. 1996). Respondent argues the mandatory supervision statute in effect when petitioner committed the assault of a public servant offense renders petitioner ineligible for release on mandatory supervision because he was <u>previously</u> convicted of aggravated robbery. Citing *McCall v. Dretke*, 390 F.3d 358, 365-66 (5th Cir. 2004), respondent maintains mandatory supervision eligibility is based on an inmate's most

---

[2]Tex. Code Crim. Proc. art. 41.12(15)(c) (Vernon Ann. 1983) ("[a] prisoner who is not on parole, except a person under sentence of death, shall be released to mandatory supervision . . . when the calendar time he has served plus any accrued good conduct time equals the maximum term to which he was sentenced.")

recent offense "rather than based on the dates of his earlier offense" and concludes petitioner is not eligible for mandatory release, that he has no liberty interest in release, and that he should be denied federal habeas corpus relief.

In *McCall*, the defendant was convicted, in 2000, of felony driving while intoxicated (DWI). The charge was elevated from a misdemeanor offense to a felony offense because of two prior DWI convictions in 1994 and 1997. While serving his 10-year sentence, petitioner was notified he would only be eligible for "discretionary" mandatory supervision which went into effect on September 1, 1996, rather than the mandatory supervision provisions which were in effect at the time he committed the DWI offenses in 1994 and 1997, and which convictions were used to elevate his 2000 DWI offense to a felony. The 1996 law regarding mandatory supervision release provided the change in the law was to apply "only to a prisoner *serving a sentence* for an offense committed on or after the [September 1, 1996] effective date."[3] The new law also provided that an offense would be considered to have been committed before the statute's effective date if "any element of the offense occurr[ed] before the effective date." The Fifth Circuit considered only the issue of whether application of the 1996 "discretionary" mandatory supervision law to petitioner constituted an *ex post facto* law. *Id.* at 364. The *McCall* Court found defendant's punishment for the 2000 DWI offense was based on the date of his most recent offense (the 2000 offense), which took place after the 1996 mandatory supervision statute became effective. The Court found the "discretionary" mandatory supervision was not a secondary punishment for the defendant's prior 1994 and 1997 offenses, but was "a statutorily authorized punishment for criminal conduct that has occurred after the passage of the law." *Id*. Consequently, the Court held the application of the 1996

---

[3] Act of June 1, 1995, 74th Leg., R.S., ch. 263, 1995 Tex. Gen. Laws 2592 (current version at Tex. Gov't Code Ann. §§ 508.147, 508.149 (Vernon 2005) (emphasis added).

"discretionary" mandatory supervision law to the defendant's 2000 conviction was not *ex post facto* because the defendant's "most recent offense took place after the statute became effective."

The issues in this case regarding petitioner Mendenhall's eligibility for mandatory supervision release are different from the issue presented in *McCall*. First, in *McCall*, the issue was not whether the petitioner was or was not eligible for mandatory supervised release, but, instead, the issue was whether the petitioner was eligible for pre-1996 or post-1996 mandatory supervision release.[4] In this case, petitioner Mendenhall was eligible for pre-1996 mandatory supervised release on each of the thirty-year aggravated robbery sentences he is currently serving when convicted. The five-year escape sentence has been stacked onto the prior aggravated robbery sentences and petitioner Mendenhall was eligible for supervised release on the escape conviction when convicted. The sixty-five year sentence for assault on a public servant has been stacked onto the prior sentences for aggravated robbery and escape, and on that sentence petitioner Mendenhall would be eligible for post-1996 mandatory supervision release as of the date he was convicted. Respondent, however, argues he is not eligible for mandatory release on the sixty-five year assault of a public servant sentence because the mandatory supervision statute in effect at the time petitioner committed the assault on a public servant offense provided that anyone serving a sentence for or <u>who had previously been convicted of, an enumerated offense, which included aggravated robbery, would be ineligible for mandatory supervised release</u>. The difficulty arises, however, because the TDCJ commitment inquiries attached to respondent's amended answer are either unclear or contradict respondent's argument. Those commitment inquiries reflect petitioner is eligible for mandatory supervision release on the six aggravated robbery sentences as well as the escape

---

[4] Post-1996 mandatory supervised release has been referred to as discretionary mandatory release as opposed to pre-1996 mandatory release which is more properly classified as automatic mandatory supervised release.

sentence. While the commitment inquiry does reflect petitioner is not eligible for mandatory supervision release on the assault of a public servant sentence, there is no information or explanation why the commitment inquiries indicate petitioner is eligible for mandatory supervised release on the other six sentences, and the Court is unable to resolve this contradiction with the information before the Court. Further complicating this issue is the fact respondent indicates that, for purposes of time calculation, of all of the sentences petitioner is serving are added together resulting in a maximum term of 100 years incarceration.[5] If, in fact, petitioner is serving what amounts to a 100-year sentence, then the TDCJ records referenced previously appear to reflect petitioner eligible for mandatory supervision on 35 years of the 100-year sentence.

Consequently, while it may very well be that petitioner is in fact ineligible for mandatory supervised release, for the reasons set forth above, respondent has not met the burden to establish that fact. Additional information regarding the actual length of petitioner Mendenhall's sentence, whether he is in fact serving a 100-year sentence and the basis for such a calculation, whether he is eligible or ineligible for mandatory supervised release on any of such sentence, and if ineligible, some explanation as to why TDCJ commitment inquiries reflect petitioner is eligible for mandatory supervised release on the majority of his sentences, are all issues which cannot be answered based upon the pleadings and information received to date. Consequently, it is the opinion and finding of the Magistrate Judge that the petition for writ of habeas corpus should not be dismissed on the basis that petitioner is not eligible for mandatory supervised release.

---

[5] The sixty-five year assault on a public servant plus the five-year escape, plus the six thirty-year aggravated robbery sentences (which are running concurrently), equal one hundred years.

V.
## EXHAUSTION OF AVAILABLE STATE REMEDIES

Respondent argues petitioner has failed to exhaust his state administrative remedies with regard to claims 2 - 4 and, thus, those claims are procedurally defaulted. In his Step 1 grievance, petitioner asserted:

> Captain Hendricks blithley (sic) seized all [petitioner's] (10) page prepared statements, written questions, request for witnesses, and documentary evidence . . . [and] abrogated [petitioner's] entitlement to present the seized items . . . at the . . . offense hearing.
> . . .
>
> Further Captain Hendrick's blanket denial of all of [petitioner's] witnesses, crucial documentary evidence, and refusal to allow the charging officer to be questioned by [petitioner's] substitute counsel denied [petitioner] the right to be heard, and Captain Hendrick's clearly calculated act/actions demonstrates that she was not an impartial decision maker which denied due process to [petitioner] when he was denied an impartial tribunal hearing officer. Further evidence of such was demonstrated by Captain Hendrick's interruptions of [petitioner's] verbal attempt at a statement during the course of said hearing.

In his Step 2 grievance, petitioner stated:

> In [petitioner's] Level One appeal . . . [petitioner] clearly outlined how his substantive procedural due process rights were violated when [petitioner] was denied due process and due course of law . . . . [Petitioner] further clearly stated that disciplinary Hearing Officer Captain Hendrick seized all of [petitioner's] statements, written questions, request for witnesses, and documentation and evidence . . . then blithley (sic) abolished [petitioner's] entitlement to present these items at the 1-17-03 hearing.

Petitioner also raised claims of insufficient evidence and no evidence to support a finding of guilt in the disciplinary proceeding.

Petitioner's claim that he was denied the right to secure written statements from witnesses prior to the hearing so as to present such statements at the hearing was not raised in either grievance. Petitioner's claim that he was denied an impartial fact finder was raised only in the Step

One grievance, and not the Step Two grievance. Petitioner's claim that he was denied the right to present documentary evidence was raised only in conclusory fashion and did not allege any specific documents, much less the documents petitioner identifies in this proceeding. The undersigned finds these claims unexhausted and procedurally defaulted.

The undersigned finds petitioner did sufficiently raise claims, in both grievances, that the hearing officer seized, from petitioner, a written statement and written questions he intended to ask his requested witnesses and thus denied him the opportunity to read the statement or ask the questions. Petitioner also sufficiently raised and exhausted the claim that he was denied the right to call and question certain witnesses.

## VI.
## MERITS

In his first ground, petitioner argues he was denied due process because the hearing officer "seized" his written statement and written questions he intended to ask witnesses and, thus, he was denied the right to present his written statement and written witness questions at the hearing. The hearing records, however, reflect the hearing officer considered petitioner's written statement in reaching her decision that petitioner was guilty of the charged disciplinary offense. (*See* record citations in respondent's amended answer, p. 14). The hearing officer also reviewed petitioner's proposed witness questions and provided written explanations for their denial. These "seized" items are part of the hearing record before this Court. Therefore, contrary to petitioner's claim, the record shows the hearing officer did not "seize" petitioner's written statement and witness questions but, rather, received them as part of the hearing record and considered them in reaching her decision. Further, there is no constitutional right to cross-examine witnesses in prison disciplinary

proceedings. *Wolff v. McDonnell,* 418 U.S. 539, 567 (1974). To the extent, if any, petitioner is arguing he was denied due process because he was not allowed to personally read his statement, petitioner has not directed the undersigned to any authority suggesting a constitutional right exists that gives an inmate the right to dictate the manner in which evidence is presented.

Petitioner's claim that he was denied due process because he was denied the right to call and question certain witnesses is also without merit. A hearing officer has discretion to deny requested witnesses in a prison disciplinary proceeding. *Smith v. Rabalais*, 659 F.2d at 543-44. Here, although not required to do so, the hearing officer clearly stated her reasons for denying petitioner's requested witnesses and proposed witness questions. Specifically, the hearing officer explained the requested witnesses, some of whom were members of the public and not employees of TDCJ, were not eligible to participate in prison disciplinary proceedings and that petitioner's proposed witness questions were about matters not relevant to the disciplinary proceeding. R. 68, 73, 75, 82. Petitioner cannot show the hearing officer abused her discretion in denying petitioner any witnesses or in refusing to submit proposed questions to witnesses. Petitioner cannot demonstrate the absence of his requested witnesses or his proposed questions to said witnesses resulted in any prejudice to his case. Petitioner's claims should be DENIED.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner CRAIG EMMETT MENDENHALL is without merit and should be, in all things, DENIED.

VIII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a file-marked copy of this Report and Recommendation to petitioner by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 26th day of October 2006.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).